CUMBERLAND TELEPHONE & TELEGRAPH COMPANY v. YAZOO
& MISSISSIPPI VALLEY RAILROAD COMPANY,

AND

CUMBERLAND TELEPHONE & TELEGRAPH COMPANY v. MOBILE
& OHIO RAILROAD COMPANY.

(TWO CASES.)

[44 South., 166.]

1. EMINENT DOMAIN. *Delegation of Power. Foreign Telephone Company.*—*Code* 1906, §§ 925, 929, 1876.

Under Code 1906, §§ 925, 929, providing that all telephone companies may set up their posts and fixtures along and across railroad tracks and exercise the power of eminent domain for the purpose of constructing new lines, a foreign telephone company has the right of eminent domain to secure a right of way along a railroad's right of way, although Code 1906, § 1876, provides that telephone companies "chartered under the laws of this state" may by condemnation acquire a right of way "across" railroads.

2. SAME. *New line. What is.*

A direct telephone line between two cities, along a route not previously occupied by the company, is a new line, within the meaning of Code 1906, § 929, empowering telephone companies to exercise the power of eminent domain for the purpose of constructing new lines, although the company has an indirect line between the same cities.

THE Yazoo and Mississippi Valley case from the chancery court of, first district, Hinds county.

HON. G. GARLAND LYELL, Chancellor.

THE Mobile and Ohio case from the chancery court of Lauderdale county.

HON. JAS. L. McCASKILL, Chancellor.

THE YAZOO AND MISSISSIPPI VALLEY CASE.

The Yazoo & Mississippi Valley Railroad Company was complainant in the court below; the Cumberland Telephone & Telegraph Company, hereinafter called the telephone company, ap-

pellant, was defendant there. From an interlocutory decree overruling the motion of the telephone company to dissolve a preliminary injunction, the telephone company appealed to the supreme court.

The railroad company sought by injunction to restrain the telephone company, a Kentucky corporation, from exercising the right of eminent domain under the statutes of Mississippi to expropriate a right of way for its lines along the right of way of the railroad company in Mississippi between Jackson and Natchez.

The appellee's bill alleged that the telephone company had instituted proceedings before a special court of eminent domain for the purposes stated, under Code 1906, ch. 43, entitled "Eminent Domain"; that it was a foreign corporation, not a citizen of Mississippi and not entitled to exercise the right of eminent domain under the laws of the state; that the condemnation proceeding was not prosecuted for the purpose of constructing a new line as required by Code 1906, § 929, prescribing generally that telephone companies, for the purpose of constructing new lines, shall have the right of eminent domain, since the appellant already had in operation a line of telephone over substantially the same route contemplated in the eminent domain proceedings, though not along the appellee's right of way; and that the statutes on the subject of eminent domain do not contemplate a right merely to re-locate telephone lines over the route already in use.

The answer of the telephone company admitted that it was a Kentucky corporation; denied that it had no right to exercise eminent domain proceedings under the laws of Mississippi; denied that its proposed line was over the same as its previously existing line of telephone; its answer alleged that, while it had a telephone connection between Jackson and Natchez the route was indirect, being via Vicksburg; that there were many towns in a direct line between Jackson and Natchez and on the line of the proposed route contemplated in the

eminent domain proceedings which were at present without telephone communication, and which would be benefited by the contemplated action of the appellant; and, in short, the telephone company claimed that the route sought to be secured over the right of way of the railroad company was for a new line of telephone.

The appellant made a motion to dissolve the preliminary injunction, previously granted, and, on the hearing of the motion, offered affidavits of persons, its officers and employes, to sustain its answer.

## MOBILE AND OHIO CASE.

The case is exactly similar in every material particular with the Yazoo and Mississippi Valley case, just stated; the *termini* of the proposed new line in this case were Meridian and Turpelo.

*Harris & Powell,* and *Tim E. Cooper,* for appellant in both cases.

We concede, of course, that no corporation, foreign or domestic, can exercise the power of eminent domain unless it is conferred by law, and we further concede that the power may be given to domestic and withheld from foreign corporations. We concede also that one who seeks to exercise that power must put his hand on the statute by which it is conferred; that we shall now attempt to do.

Historically stated, the statutes and decisions relative to the exercise by telephone and telegraph companies of the right of eminent domain are as follows:

By the Code 1871, it was provided that telegraph companies were authorized to construct their lines in this state, and "to set up and erect their posts and fixtures along, and across the turnpikes, railroads and canals, and also through any of the public lands belonging to the state." By an act approved April 5, 1876 (Laws, p. 229), it was provided that "any tele-

graph company, chartered or incorporated by the laws of this, or any other state, shall, upon making just compensation as herein provided, have the right to construct, maintain and operate telegraph lines through any public lands of this state, and on, across and along all highways, streets and roads, and across and under any navigable waters, and on, along and upon the right of way and structures of any railroad, and in case of necessity on, under or over any private land in this state." And it was further provided that in case such company should not agree with the owners of the property, it might condemn the same and machinery was provided for the enforcement of this right. By Code 1880 "all companies or associations of persons incorporated or organized for the purpose of constructing telegraph lines in this state were permitted to construct their lines; but the right to exercise the power of eminent domain seems not to have been preserved. Code 1880, § 1065–1070. On March 16, 1886 (Laws, p. 93), the act of 1876 in substance was re-enacted; by its terms it includes not only telegraph but also telephone companies, the words being "any telegraph or telephone company chartered under the laws of this or any other state of the United States." By Constitution 1890, sec. 90, the legislature was prohibited from passing any special law conferring the power of eminent domain, that section declaring that such matter should be provided for only by general laws. In the Code of 1892, the right which by the act of 1886 had been conferred upon telephone and telegraph companies to do business in this state, and to erect their lines upon public property, and to exercise the right of eminent domain was conferred on "companies or associations of persons incorporated, or organized for the purpose of constructing telegraph lines," the words *in this state* which appeared in the Code of 1880 being omitted, and no right of eminent domain or to do business in the state was conferred upon telephone companies. Code 1892, § 854. Section 925 of the Code of 1906 is precisely § 854 of the

. Code of 1892, except that the first clause reads "telegraph or telephone" instead of "telegraph lines," as did the Code of 1892; and § 929 of the Code of 1906 is § 858 of the Code of 1892, except that it also contains a like addition so as to cover telephone lines, and also a further provision in reference to interurban street railways. By Code 1906, § 937, in the chapter on corporations, it is provided that "the provisions of this chapter, when not limited by their terms shall apply to all corporations whatever, when the subject matter is not elsewhere prescribed."

Taking §§ 925, 929 and 937 of Code 1906, as they stand we suppose it will not be denied that it was the legislative purpose clearly expressed to confer the right of eminent domain on some telegraph and telephone companies. We may, we think, assume that much will be conceded. Upon what such companies was it intended to confer the right? From what such companies to withhold it? The appellee contends that the right was given to domestic companies; that it was denied to or withheld from foreign corporations. Looking to the language of sec. 929 it is to be noted.

(1) That nothing whatever is said about *foreign* or *domestic* corporations; and (2) that nothing is said about *any corporations*. The words are *telegraph and telephone companies*. While it is true that a corporation is a company, it is also true that many other associations are companies. "The simple word 'company' will include individuals as well as corporations." *Chicago Dock Co. v. Garrity,* 115 Ill., 164. "It may include private partnerships or incorporated bodies of men; hence it may signify a firm, house, partnership or corporation," Cyc. 400; it is used interchangeably with "association." *Lee Mutual Fire Ins. Co. v. State,* 60 Miss., 395; the right of eminent domain may be given to corporations, public or private; to individuals, to foreign corporations or to the federal government. Lewis on Em. Dom., sec. 242. It is the purpose for which the right is given,

and not the person to *whom* it is given that is important, and to which the attention of the legislature is primarily devoted. The end sought to be attained is manifest; it was the establishment of telegraph and telephone lines in order that the public might be served with these facilities which the development of this wonderful age has made necessities rather than luxuries. The appellant is a company engaged in the construction of its telephone lines in this state, which are to be devoted to the service of the public. Unquestionably it is within the letter of the statute, and being within the letter, presumably, it is within its meaning. If it is to be put out of the meaning, it must be by limiting the mean of the words used so as to disclose an implied exception

The above Code sections upon which we rely as conferring the power of eminent domain on the appellant, are parts of chapter 24 of the Code 1906, on "corporations." This chapter deals with three classes of corporations proper; *first,* domestic corporations, organized under its provisions. Sections 897–913–932; *second,* foreign corporations, secs. 914–919, 920–935; *third,* foreign corporations which may elect to come into the state under their original charters, and domesticate here. Sections 915–908; and also, *fourth,* companies or associations of persons incorporated or organized for the purpose of constructing telegraph or telephone lines. Sections 925–929; *fifth,* religious societies. Sections 933–934; and *sixth,* ecclesiastical bodies. Sections 934.

The chapter contains one, and only one, grant of eminent domain, that found in sec. 929, and it is conferred upon "telegraph and telephone companies, for the purpose of constructing new lines." This chapter is peculiar in this: that it has a clause for its own interpretation, viz., sec. 937. The grant of the power of eminent domain is to "telegraph and telephone companies." The learned counsel for appellee say that the legislature did not mean *all* telegraph and telephone companies, but meant *some* telegraph and telephone companies.

Now note the distinction which they draw, and how that distinction must be abandoned, when they come to one of the cognate sections of the chapter, and how it must further be divided and distinguished as applied to *all* the provisions. What the legislature intended, they say, was to confer the right of eminent domain upon domestic as distinguished from foreign corporations. But it is to be remembered that the chapter under review contains provisions, both of which are essential to the construction of telegraph and telephone lines. Section 925 gives the right to telegraph and telephone companies to go along and across public highways, streets, roads, canals and railroads, and through public lands. Under this section and without authority to condemn private property such companies could go on public property and railroads and nowhere else. Section 929 gives the right of eminent domain, but if that stood alone it would, of course, not authorize the occupation of public property, and in the absence of sec. 925 such companies could go on private property and nowhere else. The one power supplements the other; both are essential to the construction of telegraph and telephone lines. There is no reasonable construction by which one of these provisions would be applicable, and the other inapplicable to any telegraph or telephone company. *San Antonia & Arkansas Pass. R. R. Co.* v. *Southwestern Tel. Co.* (Texas), 49, L. R. A., 459.

If secs. 925 and 927 are alike applicable to whatever companies are intended to be dealt with, the contention of the appellees that not *all* but *some* companies only are meant by sec. 929, is met by the express language of sec. 925. It provides that *all* companies or associations of persons incorporated or organized for the purpose of constructing telegraph and telephone lines "shall have the right therein designated."

As a matter of precaution the legislature after enacting the foregoing section then took up the precise subject now under investigation and declared in sec. 937 that "the provisions of

this chapter, when not limited by their terms, shall apply to all corporations whatever, where the subject matter is not elsewhere prescribed." The subject now under investigation is dealt with in the chapter. That is not denied. It is not elsewhere prescribed. That is not asserted. The argument is that there is an implied exclusion of foreign corporations from the benefits of the statute, although its terms are broad enough to comprise them, and although the interpreting section distinctly declares that they apply to *all corporations* whatever.

Under such statutes the right is conferred upon foreign as well as domestic corporations. 15 Cyc., 574; *N. Y. R. R. Co.* v. *Welsh,* 143 N. Y., 411, 42 Am. St. Rep., 734. In 1899 the Postal Telegraph Cable Company, *a foreign corporation* proceeding under the provisions of the Code of 1892, similar, as stated, to the foregoing sections of the Code of 1906, filed its petition to condemn a way along the roadway of the Mobile & Ohio Railroad Company, and its right was maintained. *Mobile, etc., R. R. Co.* v. *Postal Tel. Co.,* 76 Miss., 731, s.c., 26 South., 370.

In June, 1906, the case of *Alabama & Vicksburg Railroad Company* v. *Cumberland Telephone & Telegraph Company et al.,* 88 Miss., 438, 41 South. Rep., 258, was decided by this court. The Cumberland Telephone Company and a domestic telegraph company, styled the Mississippi Telegraph Company, filed condemnation proceedings against the railroad company to condemn for their lines along the roadway of the company; this proceeding was under the Code of 1892; it was held by this court that a telephone company did not have under the Code of 1892 a right of condemnation, but it was also held that the Mississippi Telegraph Company did have the right of condemnation along the roadway of the railroad. If the right of eminent domain was not given to telegraph companies by the Code of 1892, to condemn for its lines along the right of way of a railroad company, the right was conferred by §§ 925, 929 and 937 of the Code of 1906.

Why the right of eminent domain given by the act of 1886 to telephone companies as well as telegraph companies was dropped from the Code of 1892, it is impossible to conjecture, but it is restored by the Code of 1906.

While statutes granting the right of eminent domain are to be strictly construed, they, like all other statutes, are to be so accepted as to carry out the legislative purpose. Statutes conferring the right of eminent domain do not *create* a right, and confer a remedy; for the right of eminent domain is a common law right. *Avery* v. *Groton,* 6 Conn., 304; *Tidewater Canal Co.* v. *Archer,* 9 Gill & J., 479.

There is no conceivable reason why a distinction should be drawn as between resident and nonresident corporations engaged in this service; it is to be borne in mind that as a matter of fact this state does not discriminate in any respect against foreign corporations except those engaged in the operation of railroads. They are all permitted to come into the state on a perfect equality with domestic corporations; they may bring their own charters here and domesticate by recording them, or they may do business as foreign corporations by merely filing their charters. Of course, any corporate power derived from their charters, the exercise of which is contrary to the policy of the state, would be forbidden here, but aside from that necessary and proper limitation, foreign corporations may operate here as they may in the states of their domicile, and the implied prohibition against the exercise of powers contrary to public policy is not discriminatory as between foreign and domestic corporations, for the domestic corporation cannot take such power by its act of incorporation.

The use of the railroad company's right of way for telegraph or telephone purposes is not a material interference with the use for railroad purposes. Lewis on Em. Dom., 269; Mills on Em. Dom., sec. 45. The subject is thoroughly examined, and fully decided in the following cases: *St. Louis*

*R. R. Co.* v. *Postal Telegraph Co.,* 173 Ill., 508; *Mobile &
Ohio R. R. Co.* v. *Postal Telegraph Co.,* 120 Ala., 21; *Railroad Company* v. *Tel. Co.,* 53 Ala., 211.

The objection is made by counsel for appellee that the appellant has lines along the route sought to be acquired, and that the condemnation is not for the purpose of constructing new lines. The affidavits introduced on the hearing of the motion to dissolve refer to this contention. There is no line either from Meridian to Tupelo or from Jackson to Natchez; there are means of communication through other lines having distinct and separate exchanges, but these means are inefficient, and their use results in great delay and inconvenience, not only to the appellant, but to the public. Some of these lines belong to other companies with which the appellant has connection, and others, it seems, are lines running out from its exchanges and owned by individuals whose private purposes they serve. In the case of *Mobile, etc., R. R. Co.* v. *Postal Telegraph Co.,* 76 Miss., 731, s.c., 26 South., 370, the same objection was made by the bill to which a demurrer was interposed, and which was sustained by the lower court, and affirmed by this. In that case a part of the line along the railroad had already been secured, but the purpose of the telegraph company was to extend a line through Mississippi from the Alabama and Tennessee line. We submit it is clearly shown that the lines intended to be constructed are new lines within the meaning of the statute.

*Mayes & Longstreet,* and *C. N. Burch,* for appellee, Yazoo & Mississippi Valley Railroad Company, and *J. M. Boone,* and *Bozeman & Fewell,* for appellee, Mobile & Ohio Railroad Company.

The questions to be considered in these cases are three; and stated in the order of their importance they are as follows:

1. Under the laws of this state, is any foreign telephone

company authorized to exercise, in this state, the power of eminent domain?

2. If so authorized, then is any such telephone company authorized, even on making compensation, to exercise such power in order to establish its line upon and along the rights of way of railroad companies?

3. Even if so authorized, is any telephone company authorized to exercise such power, not for the purpose of establishing a *new* line, but for the purpose only of *relocating* more conveniently to it, a line already established and in operation when the Code of 1906 became operative?

Each of the foregoing questions, we contend, must be answered in the negative; and so answered, any one of them disposes of this case.

It is settled law that the power to take land for public use, by virtue of the right of eminent domain, is distinctly a governmental power, and cannot be exercised by a corporation except by virtue of a grant of authority by the sovereign in whose jurisdiction the land lies. *Re Townsend,* 39 N. Y., 171; *Holbert* v. *Railroad Co.,* 45 Iowa, 23; *Baltimore Co.* v. *Pittsburg Co.,* 17 W. Va., 814, 864; *Glover* v. *Boston,* 14 Grey, 282; *Re South Beach Railroad,* 119 N. Y., 141; *Howe* v. *Williams,* 13 R. I., 488; *Phillips* v. *Railroad,* 78 Pa., 177; *Lynch* v. *Commissioners,* L. R., 32 Ch. D., 72.

Counsel for appellant rely upon Code 1906, §§ 925, 929 and 937 to uphold their contentions in this case. But any adequate consideration of the questions in issue must turn at last on, not these sections only, but also on secs. 1854 and 1876 in the chapter on eminent domain.

The Mississippi cases relied on by counsel for the appellant are wholly foreign to this discussion. *Mobile, etc., R. R. Co.,* v. *Postal Tel. Co.,* 76 Miss., 731, s.c., 26 South., 370, was based on the act of 1897, p. 13, which expressly conferred the power on "telegraph companies, chartered under the laws of this or any other state of the United States." This statute was

not brought forward into the Code of 1906, and consequently is now superseded. In *Alabama, etc., Railroad Co.* v. *Cumberland, etc., Co.,* 88 Miss., 438, 41 South., p. 258, the Mississippi Telegraph Company was adjudged to have the power to condemn, under the statutes then existing, for the express reason that it was a Mississippi corporation; and the Cumberland Company was adjudged not to have the power because no law or constitutional provision conferred it. The case is really a direct authority for our proposition, announced above.

Counsel for appellant rely upon the comprehensiveness of the terms employed, Code 1906, §§ 925 and 929: "*All* companies or associations of persons organized for the purpose of constructing telegraph or telephone lines," and "telegraph and telephone companies," say the two statutes; and counsel note those broad terms, and turn for further argument to Code 1906, § 937, which provides that "the provisions of this chapter shall apply to all corporations whatever, where the subject matter is not elsewhere prescribed." And opposing counsel conclude that this is clear indication that foreign corporations are included within all of the provisions of the chapter on corporations, including the right to condemn. We deny the conclusion. The Ohio statute, for instance, provided that "a magnetic telegraph company heretofore or hereafter created may construct telegraph lines, etc." It was *held* that these terms did not include a New York corporation. *Postal Company* v. *Cleveland, etc., Railroad,* 94 Fed., 234.

That the generality of the terms of these statutes does not show an intention of the legislature to include foreign corporations, is demonstrated by the history of their enactment.

By chapter 38 of the Laws of 1886, p. 93, it was expressly provided, in order to encourage and facilitate the construction of telegraph, telephone and other like lines, that, "Any telegraph or telephone company, *chartered or incorporated by the laws of this or any other state of the United States,*" might,

in brief, condemn ways along highways, roads, private lands etc.

This statute was obviously procured in order to meet the want of power felt by such companies to exist under § 1065 of the Code of 1880. It contained the two principal features of a concession to foreign corporations, and of a concession to telephone companies, of the right of eminent domain. But that act was not brought forward into the Code of 1892. That code *repealed* it; *Alabama, etc., R. R. Co.* v. *Cumberland, etc., Co.,* 88 Miss., 438, 41 South. Rep., 258. The Code of 1892 re-enacted § 1065 of the Code of 1880, and also contained a new section, sec. 858, which conceded the right of eminent domain to telegraph lines only, and to them only for new lines; and the provision about foreign companies was *studiously omitted.* Then the telegraph companies tried the matter over again, and obtained the enactment of the statute of 1897, p. 13, in which, under the guise of providing a more convenient *remedy,* the very substantial right was won back of condemning railroad rights-of-way by "telegraph companies chartered under the laws of this or any other state of the United States," etc.

Now, let this court observe the formative processes of our present code sections. First, examine the Dummy Code, submitted by the Code Commissioners to the legislature of 1906.

Section 854 proposed in the Dummy Code was § 854 of the Code of 1892, literally. Also, sec. 858 proposed by the Dummy Code was § 858 of the Code of 1892, with an addition in respect to interurban street railways. Section 1700a, proposed by the Dummy Code, was the act of 1897, literally. What did the legislature do with those recommendations? that is, what did they do with the then existing statutes? for those recommendations were simply the statutes then existing.

First, in the *House.*—Sections 854 and 858 above were amended by inserting the words "or telephone" (House journal,

p. 774) ; and this amendment was finally adopted without any trouble.

Second, in the *Senate.*—The Senate committee recommended that sec. 1700a be amended by inserting the words "or telephone" in proper places; and also by *striking out* the words "or any other states of the United States," and by inserting in lieu thereof the word "state."—This recommendation was adopted. Therefore immediately a substitute was offered for the section recommended by the committee, amended and adopted; and this substitute was adopted, and it is the present sec. 1878 (Senate journal, pp. 443, 444).

Thus, not only does the *form* of the section as it now stands in the Code show the alteration of the act of 1897 by the omission of that feature thereof which authorized foreign telegraph companies to condemn; but also the Dummy Code, and the journals of the two houses affirmatively and clearly show that this very matter was directly and carefully considered and acted on by both houses. The change in the statute was not the result of accident or oversight, but was deliberately done.

Again: it is to be noted that in 1886 and in 1897, these foreign companies had twice procured acts authorizing them to condemn property in this state; and in both of the codes immediately following, that right was taken away.

Indeed it would be a singular thing if, in *this* state, the right to expropriate property should be conferred on foreign corporations in a manner so obscure and incidental as is claimed here. The right of eminent domain is one of the most extraordinary and jealously guarded privileges of sovereignty, the nonabridgment of it is even secured by constitutional provision; and it is not lightly to be considered as delegated to any set of individuals, and still less to a foreign artificial entity whose domicile is outside the state, and whose internal workings are beyond the state's investigation or control.

Section 929 is the only section in the Code chapter which declares that telegraph and telephone companies (of any sort) may exercise the power of eminent domain; and the declaration is that they may exercise that power *as provided in the chapter on that subject.*" Here is the matter "prescribed elsewhere." And this striking restriction of the extent and conditions of such exercise to the provisions of the chapter on eminent domain, is carefully repeated, in the same section, in the sentence (a new one) about street railways. Herein is a manifest and indisputable reference to § 1876 of the Code, which is the section in the chapter on eminent domain containing the regulation of condemnations by telephone companies, telegraph companies and street railway companies, of railroad ways—a clear supplement to sec. 929—and sec. 1876 not only does not declare that condemnations may be made by foreign companies; but even, by its very terms restricts the power to companies "chartered under the laws of this state"; and from the original draft of it the legislature, as we have already shown, struck out the words letting in foreign corporations, and thereby to that extent repealed the existing act of 1897.

No telephone company, foreign or domestic, can, in this state, condemn a right of way along the right of way of a railroad.

We do not claim that such power cannot be conferred by the legislature: but do claim that it has never been conferred.

It is a well established rule that property already devoted to public use is so far favored by the state that it cannot be taken in furtherance of a new use, unless the legislature plainly intends it to be; *Penn. Railroad Appeal,* 93 Pa., 150; *Springfield* v. *Railroad,* 4 Cush., 63; *Railroad Co.* v. *Railroad Co.,* 124 Mass., 368; *Boston, etc., Railroad,* 53 N. Y., 574; *New York Central Railroad,* 77 N. Y., 248; *People* v. *Thompsom,* 98 N. Y., 6; *Wheeling Bridge* v. *Bridge,* 34 W. Va., 155; *Railroad Co.* v. *Faribault,* 23 Minn., 167; *Atlanta*

v. *Railroad Co.,* 53 Ga., 120; *Railroad Co.* v. *Belle Centre,* 48 Ohio, 273.

The erection of a telephone line along the right-of-way of a railroad, is the imposition of a new use, and is a partial taking of the railroad's property. *Telegraph Co.* v. *Railroad Co.,* 6 Biss., 158; *Stowers* v. *Telegraph Co.,* 68 Miss., 558, s.c., 9 South, 356.

Section 925, and its following and supplementary sec. 926, do not even purport to confer the power of eminent domain on *any* company, foreign or domestic. Their manifest intention and effect are to authorize telegraph and telephone companies, so far as the right of *public property* is concerned, or the *public interest* is concerned, to construct and operate their lines upon and over those places which either belong to the public or else are charged with a *public use.*

No telephone or telegraph company, foreign or domestic, is authorized to employ the power of eminent domain merely in order to relocate an established line.

Section 929 of the Code is appellant's charter—such as it is. The restriction by it is express. The companies are authorized to exercise the power, not only under the restrictions of the chapter on eminent domain, but even then only "for the purpose of constructing *new lines.*" This limitation cannot be ignored.

What is a "new line?" We maintain that a new line is not constructed when the company merely desires to relocate its poles and wires to subserve its own convenience and economies, even though moving them over comparatively wide spaces, if the lines as relocated and reconstructed serve substantially the same groups of patrons. It is a question of an employment of the state's prerogative. Neither the state in its governmental capacity, nor the public of more restricted areas of the state, has any concern whatever in the conveniences and economies of the company. If the people have service established and in use, that is all they are concerned about;

and there is no *reason* for the state's prerogative to be employed for the company's exclusive profit.   *Lusby* v. *Railroad Co.,* 73 Miss., 360, 19 South., 239.

Argued orally by *J. B. Harris,* and *Tim E. Cooper,* for appellant.

*Edward Mayes,* and *A. S. Bozeman,* for the respective appellees.

MAYES, J., delivered the opinion of the court.

The main question to be considered in this case is whether or not a foreign telephone company has the power, under the laws of this state, to exercise the right of eminent domain. That the power to exercise this right and take land for public use by virtue of eminent domain proceedings can only be exercised by virtue of the authority of the state in whose jurisdiction the land lies is, we think, incontrovertible law. It is conceded in this case that the Cumberland Telephone & Telegraph Company is a nonresident, and not chartered under any law of the state of Mississippi.   In the chapter on corporations (§ 925) of the Code of 1906 it is provided that "all companies or associations of persons incorporated or organized for the purpose of constructing telegraph or telephone lines shall be authorized to construct the same, and to set up and erect their posts and fixtures along and across any of the public highways, streets, or waters, and along and across all turnpikes, railroads, and canals, and also through any of the public lands; but the same shall be so constructed and placed as not to be dangerous to persons or property, nor interfere with the common use of such roads, streets, or waters; or with the convenience of any landowner more than may be unavoidable; and in case it shall be necessary to cross any highway, the same shall be so constructed as to cross such highway at right angles."   By the above section, which is found in the

chapter on corporations only, it will be seen that express authority is given to all companies or associations of persons, incorporated or organized for the purpose of constructing telegraph or telephone lines, to construct the same, and to set up and erect their posts and fixtures along and across all turnpikes, railroads, etc. On the reading of this section—that is to say, § 925 of the Code of 1906—there can be no doubt that the legislature intended to give the authority to all companies alike, whether foreign or domestic, to construct their lines along and across turnpikes, railroads, etc. It is true that in this section no power of eminent domain is conferred, and, if this section stood alone, no telephone company could avail itself of the authority granted, except by contract with the authority in control of the highways, streets, or waters, or with the owners of the turnpikes, railroads, etc. But under sec. 929, in the same chapter, telegraph and telephone companies, for the purpose of constructing new lines, are empowered to exercise the right of eminent domain, as provided in the chapter on that subject. Taking, then, these two sections together, we find that by sec. 925 all companies or associations, incorporated or organized for the purpose of constructing telegraph or telephone lines, are given the authority to construct their lines along and across the property named in sec. 925; and by sec. 929 telegraph and telephone companies—that is to say, all telegraph and telephone companies —are empowered to exercise the right of eminent domain for the purpose of constructing new lines. In the whole chapter on corporations the grant of eminent domain powers is found in but one section, and this is in sec. 929, above referred to, and is conferred upon telegraph and telephone companies, whether foreign or domestic, and for the purpose of constructing new lines; and the only other corporation which is given this power in the chapter on corporations is the interurban street railway, and, as with telephone companies, it is given only for the purpose of constructing new lines.

If the sections of the statute quoted above stood alone, there. would be no difficulty about this case. If the two sections quoted were the only places wherein this subject was dealt with in the Code, it would be too plain for argument that the statute not only gives authority to the telephone company to run its line along the right of way of the railroad, but has given it an enforceable authority, in that it has-empowered it, in furtherance of the erection of its line along the right of way of railroads, to condemn the property for the purpose of erecting thereon its telephone line. The confusion grows out of the fact that in another section of the Code the law undertakes to deal again with this same subject. In the chapter on eminent domain (sec. 1876) it is provided that "telephone, telegraph or street railway companies, chartered under the laws of this state, may acquire a right of way across railroads by condemnation by proceeding in accordance with the provisions in this chapter." Now, note the distinction between sec. 925 and sec. 929, found in the chapter on corporations, and sec. 1876, found in the chapter on eminent domain. In the first place it will be noted that sec. 925 authorizes all companies or associations of persons, incorporated or organized for the purpose of constructing telegraph or telephone lines, to construct the same, etc. In this section there is no restriction upon the right of any telegraph or telephone company to exercise this authority, whether it be chartered according to the laws of this state or not; but the authority is given generally to all companies or associations of persons incorporated or organized for the purpose of constructing telegraph or telephone lines. In sec. 929 power to exercise the right of eminent domain is given, indiscriminately and without restriction, to "telegraph and telephone companies." In these two sections nothing is said as to the place where these telegraph and telephone companies are to be chartered. In other words, the general authority is given to any and all telephone companies to construct their lines along railroads,

etc., and the general power is given to all telephone companies, when constructing a new line, to exercise the right of eminent domain, irrespective of where they may reside or where they may have procured their charter. Another thing is to be noted in reference to sec. 929, and that is that the authority is not only given to all companies or associations of persons incorporated or organized for the purpose of constructing telegraph or telephone lines to construct same, but the statute expressly says that they may set up and erect their posts and fixtures along and across any of the public highways, railroads, etc. Now by this section authority is expressly given both to run the line along the railroad, and also across the railroad, if necessary. By sec. 1876 the only power given a telephone company to acquire a right of way by condemnation proceedings is, first, that they may only acquire a right of way across a railroad; and, secondly, under this section, the only telephone company which may do this is a telephone company chartered under the laws of this state. The object of the condemnation proceedings in the case before the court is to condemn a right of way along the railroad, as authorized by sec. 925, and not across.

It is argued by counsel for the respective appellees that under sec. 929, giving to telephone companies the right to exercise the power of eminent domain, it is provided that the right must be exercised as is provided in the chapter on that subject. Turning to the chapter on eminent domain, the only power to exercise the right is given to telephone companies chartered under the laws of this state. From this counsel argue that it necessarily follows that no telephone company, other than a telephone company chartered under the laws of this state, has the power, in any event, to exercise the right of eminent domain, and that even a domestic company can condemn a right of way across a railroad, and not along its right of way. We cannot adopt this construction of the statute. If all the authority which any telephone company has to exercise the right

90 Miss.—45

of eminent domain is to be found in sec. 1876, and secs. 925 and 929 are to be disregarded, the telephone business in this state would have to be abandoned. We cannot give the law such an interpretation, for to do so would be to involve the legislature in what might properly be called "legislative nonsense." Let us see what would follow. In the first place, no company could exercise the right of eminent domain, except a company chartered under the laws of this state. In the next place, they could not condemn property anywhere, except a right of way across the railroad. They would have to establish their office on one side of a railroad right of way, and could only run their lines across this right of way to an office on the other side. They could not leave when they got across, because they have no other power by sec. 1876 except to condemn the right of way across the railroad; nor could they bring their lines to the right of way along the streets or highways, for they have no power under this section except to establish a line across the railroad. In other words, the authority granted by sec. 925 to construct their lines, and set up posts along and across the public highways, streets, or waters, turnpikes, canals, and through any of the public lands, and the power to exercise the right of eminent domain given them by virtue of sec. 929, all fade out and become a mere nothing before sec. 1876, if it is to be said that this section gives the only powers which telephone companies have under the laws of this state is to acquire rights of way. When § 929 of the Code says that telegraph and telephone companies, for the purpose of constructing new lines, may exercise the right of eminent domain as provided in the chapter on that subject, it merely means they must exercise the right according to the procedure outlined in chapter 43 on the subject of eminent domain as being the procedure by which all corporations having the power of eminent domain must proceed when undertaking to condemn property, and does not refer to sec. 1876, the only place in the chapter where telephone companies

are mentioned, as being the measure of power which telephone companies have in this state to exercise the right. Even telephone companies chartered under the laws of this state, as provided in sec. 1876, when they undertake to assert the right that is given them to acquire a right of way across railroads by condemnation, must proceed in accordance with the provisions "in this chapter"; that is to say, in the chapter on eminent domain, for no other way is pointed out by sec. 1876. When they undertake to enforce the right given by sec. 1876, they must do exactly what is required of telephone companies by sec. 929 when they undertake to enforce by eminent domain proceedings the authority conferred upon them by sec. 925 of the Code; that is to say, they must proceed "as is provided in the chapter on that subject"—that is, chapter 43, on the subject of eminent domain.

We are now dealing with the right that a foreign telephone corporation has to erect its along the railroad right of way and the power it has to condemn for this purpose. We are not dealing with any of the rights which are given to telephone companies chartered under the laws of this state according to sec. 1876. The right there given, the only right given, is the right to acquire a right of way across railroads. We will deal with the power that a foreign telephone corporation has to condemn a right of way across railroads when that question is presented to us. We say nothing as to the effect which sec. 1876 has upon sec. 925 and sec. 929, further than we have expressly stated in this opinion.

Counsel for appellee next insist that, even if it be true that the power of eminent domain is granted to the telephone company, still it is expressly limited to the construction of new lines and cannot be exercised when it is the purpose of the telephone company to merely relocate its poles and wires to subserves its own convenience and economies, even though moving them over comparatively wide spaces, if the line as relocated and reconstructed serves substantially the same

group of patrons.   We are not disposed to give so narrow a construction to the statute.   To do so would be subversive of the public policy of the statute and the evident intention of the legislature.   It is our view that a "new line" is constructed, within the meaning of the statute, whenever the telephone company changes its route and runs its line in a different route from that already occupied by it, involving the necessity of taking and occupying land not theretofore occupied by it.   The facts in this case show that the telephone company is not now operating, and does not own, a direct line from Jackson to Natchez, or over the route proposed to be acquired by this proceeding.   The only means of communication between Jackson and Natchez is by the circuitous route from Jackson to Vicksburg, and from Vicksburg to Fayette, and from Fayette to Natchez.   It is proposed to construct a direct line from Jackson to Natchez along the right of way of the Yazoo & Mississippi Valley Railroad Company running from Jackson to Natchez, and clearly it cannot be argued that this is not the construction of a new line within the meaning of this statute.   A like state of facts, the construction of a distinct line from Meridian to Tupelo, is presented in the Mobile & Ohio case.

. The question of equity jurisdiction is settled in the case of *Vinegar Bend Lumber Co.* v. *Oak Grove & Georgetown R. R. Co.*, 89 Miss., 84, s.c., 43 South., 292.

*The motion to dissolve the injunction is sustained in each case, and the case is reversed and remanded.*