690    SUPREME COURT OF KANSAS.

Kansas Gas & Elec. Co. v. Public Serv. Comm.

No. 27,695.

THE KANSAS GAS AND ELECTRIC COMPANY, *Appellant,* v. THE
PUBLIC SERVICE COMMISSION OF THE STATE OF KANSAS, LEW T.
HUSSEY et al., *Appellees.*

(261 Pac. 592.)

SYLLABUS BY THE COURT.

1. PUBLIC SERVICE COMMISSION — *Statutory Authority and Jurisdiction — Restricting Similar Services in Community.* The public utilities act confers upon the public service commission the power to determine whether a community already occupied and served by one utility may be invaded by another utility giving the same kind of service, and whether the public interest or that of the utilities would be subserved by the construction and installation of a second system in the community.

2. SAME—*Necessity that Utility Obtain Permit to Enter New Territory.* A provision of the act (R. S. 66-131) interpreted, and it is held that a utility that was doing business in the state when the act was passed, and is proposing to enter a community not theretofore occupied by it, must obtain from the commission a permit to do so, and may be required to conform to reasonable regulations of the commission in respect thereto.

3. SAME—*Constitutional Law.* Such a regulation and requirement is not a violation of the constitutional rights of the utility.

4. SAME—*Statutory Authority and Jurisdiction—Regulating Entrance of Utility Into New Territory.* It is within the power of the commission to determine whether a permission to a second utility would operate as a needless economic waste disadvantageous alike to the public and the utility, and if these facts were found to exist to make an order regulating the service, in effect substituting regulation for competition, and even going to the extent of excluding the applying utility from the zone or territory already occupied and being served by another utility with the permission of the commission.

Appeal from Shawnee district court, division No. 3; OTIS E. HUNGATE, judge. Opinion filed December 10, 1927. Affirmed.

*Fred S. Jackson, James E. Smith,* both of Topeka, and *Henry L. McCune,* of Kansas City, Mo., for the appellant.

*William A. Smith,* attorney-general, *M. J. Healy, John M. Kinkel,* both of Topeka, and *Louis E. Clevenger,* of Emporia, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: In this proceeding two electric power companies are contending for the right to supply a cement plant at Mildred, a large user of electric current, with the power necessary to the op-

eration of the plant. The Kansas Utilities Company, hereinafter spoken of as the utilities company, was organized on September 19, 1919, and has been engaged in manufacturing, distributing and selling electric current to consumers in five counties near its headquarters at Fort Scott, to wit: Bourbon, Allen, Woodson, Coffey, Anderson and Linn counties. It applied to the public utilities commission, now called the public service commission, and hereinafter designated as the commission, for a certificate or permit to carry on the business for which it was organized, and this was awarded on August 4, 1920. Later, and on March 15, 1923, by an amendment it changed its corporate name to the name now used, and obtained from the commission a certificate of convenience and necessity to do business in the zone composing the counties named. It has transmission lines in this territory, and one of its lines reaches a point within thirteen miles of the current plant mentioned, and it had asked the commission for authority to extend the line to the cement plant. The plant, it appears, is close to the load center of the utilities company.

The Kansas Gas and Electric Company, hereinafter designated as the electric company, was duly organized in 1910, and was authorized by the charter board of the state to carry on the business of manufacturing, distributing and selling electric current in Kansas. It engaged in business and sold and distributed electric current to consumers in a number of counties in the state, but principally in Sedgwick and Butler counties. It appears to have a line to Bluffville, Wilson county, which was about forty-eight miles from the cement plant, and it applied for permission to construct a transmission line to Mildred with a view of furnishing electric current to the cement plant, but it had not obtained a certificate of convenience and necessity for the extension or the furnishing of current in that zone. It further appears that the cement plant was ready and willing to buy current from either of the power companies which it found was able to supply sufficient current for the operation of the plant at a reasonable cost. A hearing was had before the commission on January 3, 1925, nominally for authority of the utilities company to build a transmission line to the cement plant, and at the same time the electric company applied to the commission for permit to build a transmission line from Bluffville to Mildred.

Elaborate pleadings and statements were filed and made and much testimony produced before the commission by the parties, but

692 SUPREME COURT OF KANSAS.

Kansas Gas & Elec. Co. v. Public Serv. Comm.

there was a broadening of the issues, and both of the contending parties joined in asking for a decision as to the power of the commission to limit the territory in which a utilities company may operate. The electric company contended that the commission had no jurisdiction to define limits or to prevent duplication of service in a community, and in particular had no power to exclude it from supplying electric current to consumers in any territory within the state. The utilities company contended that the electric company should not be allowed to invade the territory for which the commission had granted it a certificate of convenience and necessity, it being shown that it was able, ready and willing to supply current to all consumers within the zone or district over which a certificate of convenience and necessity had been granted to it by the commission. At the end of the hearing the commission decided that it had power to regulate the service and define the limits in which a public service utility may do business in the state; that the utility has and should have the present and exclusive right to operate in the territory for which a certificate had been granted, and that the electric company should refrain from interfering with the public service already established and maintained by the utilities company in the territory defined until authority to do so had been given by the commission. Later, the electric company brought this action in the district court to enjoin the enforcement of the order, and upon a demurrer setting forth the facts, the court held that where—

"One utility is attempting to enter territory occupied and served by another utility of the same character, and where such competition would have the effect of duplication service to the injury of the users of the commodity furnished, that the public service commission has the jurisdiction and authority to exclude the applicant company."

Judgment was accordingly given for the defendants.

The question first argued relates to the interpretation and effect of a section of the public utility act, which provides:

"No common carrier or public utility governed by the provisions of this act shall transact business in the state of Kansas until it shall have obtained a certificate from the public utilities commission that public convenience will be promoted by the transaction of said business and permitting said applicants to transact the business of a common carrier or public utility in this state. This section shall not apply to any common carrier or public utility governed by the provisions of this act now transacting business in this state." (R. S. 66-131.)

It is contended by the plaintiff that the last clause of the section

Kansas Gas & Elec. Co. v. Public Serv. Comm.

made it unnecessary for it to obtain a certificate or permit to extend its business into territory not occupied by it when the public utility act was passed, and that in fact it was entitled to occupy new territory and carry on its business without permission or any interference or interruption by the state or the public service commission. The plaintiff, as well as some other utilities, had obtained authority and were already engaged in business when the public utilities law was enacted. The status of these companies as going concerns was recognized by the legislature and a permit to enter the state and do business was deemed to be unnecessary. As to new utilities or those not yet authorized to do business in the state, it was provided that they could not come in and begin business until they had obtained from the commission a certificate that the public convenience would be promoted by allowing them to enter the state and transact business as a public utility. A company already in the state which had an established business and was then giving service to the public was exempted from obtaining a permit, but the new company applying for admission was required to satisfy the commission that public convenience would be subserved by permitting them to transact business in the state. When that permit was granted to the new company it was placed on a par with those already in the state and engaged in serving the public. We think it was not the purpose of the legislature to relieve any public utility doing business in Kansas from the regulatory powers, supervision and control of the commission. It could not have been the intention, we think, to discriminate as between utilities admitted to and doing a like business in the state, supervising and regulating one and allowing another to run at large, doing business as it chose, free from regulation or control. The public utilities act is an elaborate one, giving the commission full power and authority to supervise and control all public utilities, and nothing in it indicates a purpose that any of the utilities can escape this supervision and control, or can claim a preference over another utility engaged in the same public service. Such a discrimination, if it was intended, could not be upheld. The first section of the act provides:

"The public utilities commission is given full power, authority and jurisdiction to supervise and control the public utilities and all common carriers, as hereinafter defined, doing business in the state of Kansas, and is empowered to do all things necessary and convenient for the exercise of such power, authority and jurisdiction." (R. S. 66-101.)

694        SUPREME COURT OF KANSAS.

Kansas Gas & Elec. Co. v. Public Serv. Comm.

Looking over the different provisions of the act, it seems reasonably clear that the legislative purpose was to subject all utilities operating thereafter in the state to the same supervision and control. One already in the state and serving a community is allowed to continue such service to that community without the permit required of a utility entering the state after the law was enacted. If it desired to extend its service to other communities, a certificate of convenience and necessity for such extension must be obtained from the commission, and as to extensions it was subject to the same restrictions as utilities admitted to do business in the state after the public utilities law was enacted, and to the same control as to regulations and service. If the commission is vested with the power to regulate and limit the extent of territory in which a utility may extend its operations and thus prevent wasteful competition and duplication of service, which would tend to cause inconvenience to the public and increase the cost of electric current to consumers, the plaintiff has no reasonable cause of complaint.

Plaintiff contends that such power has not been vested in the commission by the legislature, and if exercised would be an unconstitutional invasion of its rights. It is argued that the provision relating to certificates of convenience and necessity should not be applicable to utilities "now transacting business in the state," is an added right to its franchise which cannot be constitutionally taken from it. Counsel says:

"By specially exempting the old companies from the new law all their rights were preserved, and this provision went much further than merely relieving the old companies from applying for a certificate from the new commission. Whatever may be the powers of the commission to create or protect a monopoly under the new section of the law, such powers by express enactment of the legislature do not extend to the old companies nor control their activities and property rights. The commission is given no power of any kind to curb or limit corporate or franchise powers existing at the time the law went into effect. It has been asserted by the state at certain stages of these proceedings that the exemption contained in the section under consideration should be construed to apply only to such parts of the state as were actually occupied by plaintiff at the time of the law's enactment. But we assert that the more reasonable view is that the legislature must have known that franchises and public engagements are commonly accepted in entirety and not by piecemeal and intended to protect such franchises as had been accepted and were then being acted upon in their entirety."

It was further said that—

"The grant and the acceptance by a chartered company includes what could

Vol. 124.               JULY TERM, 1927.                695

Kansas Gas & Elec. Co. v. Public Serv. Comm.

reasonably have been held in prospect by the company and all that could fairly have induced the incorporators to make their investments and assume the public duties imposed by the franchise, and that such rights whether rising to the dignity of contracts or not will not be forfeited or repealed, except upon a clear and unmistakable declaration of the legislature showing an intent to forfeit or repeal rights and privileges so acquired."

The regulations in question cannot be considered a part of the charter rights of the plaintiff, but constitute an exercise of the police power which the state retains for the protection of the public safety and welfare. It is too late to insist that utilities organized and chartered under our general law are not subject to the police power designed for the protection of the public and the utility as well. In *Atlantic Coast Line v. Goldsborough*, 232 U. S. 548, 558, the court said:

"It is settled that neither the 'contract' clause nor the 'due process' clause has the effect of overriding the power of the state to establish all regulations that are reasonably necessary to secure the health, safety, good order, comfort or general welfare of the community; that this power can neither be abdicated nor bargained away, and is inalienable even by express grant; and that all contract and property rights are held subject to its fair exercise." (See, also, *Union Dry Goods Co. v. Georgia P. S. Corp.*, 248 U. S. 372.)

The public utilities act in terms is made to apply to "all companies for the production, transmission, delivery or furnishing of heat, light, water or power." (R. S. 66-104.) In a case where one telephone company was seeking to enter territory occupied by another and was enjoined from doing so, it was said, among other things:

"The enactment of the public utilities law was an extension of the police power of the state over such utilities, but it did not grant any additional rights to such utilities as were established and maintained before the adoption of that act, and the Baxter Telephone Company procured no rights thereunder which it may maintain against possible competitors. The public utilities law was not enacted as an extension or enlargement of the powers and privileges of an existing telephone company." (*Telephone Co. v. Telephone Association*, 94 Kan. 159, 166, 146 Pac. 324.)

The power contested here has been recognized as existing in a number of our former decisions. In *Janicke v. Telephone Co.*, 96 Kan. 309, 150 Pac. 633, a party had established a telephone system in a city, and another company proposing to enter the city and transact a like business made application to do so, which was denied by the city council. A contract was made between the established company and the invading utility for an exchange of business, with

696 SUPREME COURT OF KANSAS.

Kansas Gas & Elec. Co. v. Public Serv. Comm.

the stipulation that the new utility should not put in telephone service within the city. The new company, however, undertook to install phones in the city, which was a violation of the contract and of public policy. An injunction against its action was granted. In an appeal it was said:

"Two telephone systems serving the same constituency place a useless burden upon the community, cause sorrow of heart and vexation of spirit, and are altogether undesirable. The public utilities commission, with its power over rates and sufficiency and efficiency of service, can quickly suppress any evil consequences of monopoly, and good public policy favors rather than discountenances a single system. In this instance the public was distinctly benefited by the arrangement whereby subscribers to each system, each operating in a different field, acquired the free use of the other." (p. 311.)

In treating of the policy of regulating and limiting the service to a single utility and its effect on the utility and the public, the court said:

"Moreover, in passing under the jurisdiction of the state commission the defendants are not going to be subjected to some malignant influence. The commission may require some more formality in the conduct of their business, but there are compensations. It will be defendants' duty to give adequate service at reasonable rates, but in return their business will be protected from wasteful and ruinous duplication and competition. Note the plight of one defendant in this action which has made some effort to obey the law, the Wakeeney company. Its service has been interfered with by a new company, the Trego, for whose benefit the connection between the lines of the Wakeeney company and of the other defendants was severed in January, 1922. If the Wakeeney company and the other defendants were giving efficient and sufficient service, the Trego company should have kept out of the field or developed a field of its own. It had no right to interrupt the public service being performed by the other defendants. It was to prevent such mischievous rivalry that the law made a certificate of convenience to be issued by the commission a prerequisite to engage in a public utility business." (*State, ex rel., v. Telephone Co.,* 112 Kan. 701, 705, 212 Pac. 902.)

The question was the subject of consideration in *Telephone Co. v. Telephone Association,* supra, in which it was remarked that—

"We can see no fundamental difference between the telephone business and any other business except that owing to its importance and general use one telephone system is likely to be more satisfactory and less expensive than where two or more such companies occupy the same field. This the legislature has recognized and has provided that as a matter of public policy no public utility like a telephone company, excepting one strictly mutual, will be authorized to do business until it has obtained a certificate or a license of authority as a public convenience and necessity within the community where it

Vol. 124.    JULY TERM, 1927.    697

Kansas Gas & Elec. Co. v. Public Serv. Comm.

seeks to do business. . . . Prior to the passage of the public utilities act any number of telephone companies which would persuade a city government to grant a franchise for the use of the streets and alleys, might establish a telephone system within such city. The competition of these would affect the business and affect the revenues of other utilities of the same character which had previously been established." (p. 166.)

In view of these decisions it is hardly necessary to refer to outside authorities, but we may refer to *Weld v. Gas & Electric Light Commissioners*, 197 Mass. 556, wherein it was said:

"In the first place, in reference to this department of public service, we have adopted, in this state, legislative regulation and control as our reliance against the evil effects of monopoly, rather than competitive action between two or more corporations, where such competition will greatly increase the aggregate cost of supplying the needs of the public, and perhaps cause other serious inconveniences. . . . The state, through the regularly constituted authorities, has taken complete control of these corporations so far as is necessary to prevent the abuses of monopoly. Our statutes are founded on the assumption that, to have two or more competing companies running lines of gas pipe and conduits for electric wires through the same street would often greatly increase the necessary cost of furnishing light, as well as cause great inconvenience to the public and to individuals from the unnecessary digging up of the streets from time to time, and the interference with pavements, street railway tracks, water pipes and other structures. (Citing authorities.) In reference to some kinds of public service, and under some conditions, it is thought by many that regulation by the state is better than competition." (p. 558.)

In Pond on Public Utilities, 3d ed. § 901, the subject of supplanting competition with state regulation was discussed and it was said that—

"The theory of the regulation of municipal public utilities by the state through such a commission is to avoid competition which is now generally recognized as a needless economic waste and an entirely insufficient method of securing the necessary regulation and control. Under this method the state through its commission takes the place of competition and furnishes the regulation which competition cannot give, and at the same time avoids the expense of duplication in the investment and operation of competing municipal public utilities."

We think the commission had the power to regulate the service and define the limits prescribed, that its exercise operates beneficially to the public and is not inimical to the interests of the utilities. Such an order is really advantageous to an invading utility whose application was denied, where the admission of a second utility would be a serious inconvenience to and burden upon the public, and where the

698 SUPREME COURT OF KANSAS.

Kansas Gas & Elec. Co. v. Public Serv. Comm.

duplication of service would necessarily result in an increase of expense in the production and delivery of the current. The plaintiff, as we have seen, had an established business in several communities when the law was enacted. It was entitled to protection as against another competitor which was proposing to invade a community the former was already serving. By the act it was given the right to appeal to the commission to exclude the invading utility from constructing and establishing a duplicate system which would result in wasteful competition and the reduction of its revenues. If the invading utility had, like the plaintiff, been engaged in business when the utilities law was enacted and was insisting on the right to operate in the community already occupied by plaintiff, without a permit, because it was in business when the act was passed, would the plaintiff concede that the invading company could enter and operate therein without a certificate of convenience and necessity from the commission? Would it concede that the invading company was outside of the regulations of the act? In the circumstances the plaintiff would need protection, and the commission upon application would have the power, we think, to investigate and determine whether there was necessity for the duplication or whether it would be wasteful and a useless burden upon the community. The plaintiff would have the right to insist that the invading company, doing business when the law was enacted, must procure a permit from the commission before installing a second system the same as is required of a utility organized since the enactment of the law.

Our conclusion is that the decision of the district court was correct, and its judgment is affirmed.