**A. W. CLINE, Appellant,**

v.

**KANSAS GAS AND ELECTRIC COM-PANY, a corporation, Appellee.**

No. 5913.

United States Court of Appeals
Tenth Circuit.

Oct. 22, 1958.

272

A. R. Lamb, Coffeyville, Kan. (Paul A. Lamb, Coffeyville, Kan., on the brief), for appellant.

Stanley Garrity, Wichita, Kan. (Jay W. Scovel, Independence, Kan., on the brief), for appellee.

Before BRATTON, Chief Judge, and PHILLIPS and LEWIS, Circuit Judges.

BRATTON, Chief Judge.

This litigation concerns itself with conflicting claims to a strip of land fifty feet wide. W. A. Cline, sometimes hereinafter referred to as Cline, owned a tract of land containing 160 acres adjacent to the city limits of Coffeyville, in Montgomery County, Kansas. Kansas Gas and Electric Company, sometimes hereinafter referred to as the Company, instituted in the district court of such county an action to obtain by condemnation a right-of-way fifty feet in width across the tract for the purpose of constructing thereon an electric transmission line. The court found that the Company had power of eminent domain and that the lands sought to be condemned were necessary for its lawful, corporate purposes. Appraisers were appointed and they filed their report in which an award of damages was made. The court entered an order approving the report as to form, fixing the amount of the fees of the appraisers, assessing costs, and directing the filing in the office of the Register of Deeds of the county a transcript of the proceedings affecting title to the land; and the transcript was filed and recorded. The

Company paid to the clerk of the court the amount of the award, the fees of the appraisers, and the costs. The Company thereupon entered into possession of the right-of-way; constructed thereon its transmission line; and put such line in use for the transmission of electric energy. Cline appealed to the district court from the award of the appraisers. Following a trial in the district court, the jury returned a verdict awarding damages. On appeal, the judgment was reversed and the cause was remanded with directions to grant a new trial, Cline v. Kansas Gas & Electric Co., 182 Kan. 155, 318 P.2d 1000; and as we understand, the proceeding is awaiting the second trial.

With that background existing between the parties, Cline instituted this action against the Company. The complaint was in three causes of action, one in ejectment, one to remove cloud and quiet title, and one for damages for wrongful trespass. The proceedings in the condemnation action were pleaded in defense. Conforming to conventional preliminaries, both parties filed in the case certain admissions of fact. The defendant filed a motion for summary judgment upon the ground that it appeared from the pleadings, the admissions, the affidavits attached to the motion, and the other documents on file, there was no genuine issue as to any material fact; and that the defendant was entitled as a matter of law to judgment in its favor. Summary judgment was entered for the Company, and Cline appealed.

The judgment is challenged upon the ground that the entire proceeding in the condemnation action was void for the reason that since the Company was a foreign corporation it was not vested with the power of eminent domain in Kansas; that since the Company was not vested with such power, the state court lacked jurisdiction to entertain the action in condemnation; and that therefore title to the strip of land was still vested in Cline. It is a principle firmly imbedded in the field of fundamental law that the power to appropriate private property for public use is an attribute of sovereignty. But, in the absence of a limiting or restricting constitutional provision, the legislature may delegate such right to another, provided that the property is to be devoted to public use, that there is public necessity that it be taken for such use, and that provision is made for the payment of just compensation. In harmony with that principle of fundamental law, it is the general rule in Kansas that the power of eminent domain can be exerted only by virtue of legislation expressly authorizing its exertion; that such power lies dormant in the state until the enactment of legislation expressly authorizing its exercise; and that under normal conditions, statutes granting such power should not be enlarged by implication. Strain v. Cities Service Gas Co., 148 Kan. 393, 83 P.2d 124; Sutton v. Frazier, 183 Kan. 33, 325 P.2d 338.

In presently pertinent part, section 66–104, General Statutes of Kansas 1949, defines the term "public utility" to mean every corporation for the production, transmission, delivery, or furnishing of heat, light, or power. The Company is a corporation organized under the law of West Virginia, is authorized to engage in business in Kansas, and is engaged in the business of generating, transmitting, selling, and distributing electric current to consumers in a number of counties in Kansas. Kansas Gas & Electric Co. v. Public Service Commission, 124 Kan. 690, 261 P. 592. Therefore, it is a public utility within the scope and meaning of section 66–104, supra.

Section 17–505, General Statutes of Kansas 1949, provides in substance that every foreign corporation authorized to do business in the state shall be subject to the same provisions, judicial control, restrictions, and penalties, except as therein provided, as domestic corporations. And section 17–618 provides in presently pertinent part that lands may be appropriated for the use of electric companies in the same manner as is provided for railway corporations as far as applicable. The two sections must be construed together. And when construed in

that manner, they constitute an express legislative grant of power of eminent domain to an electric utility company organized under the laws of another state and authorized to do business in Kansas to obtain by condemnation a right-of-way across land for the construction thereon of an electric line for use in the conduct of its business of generating, transmitting, selling, and distributing electric energy for consumers generally. Southern Illinois & Missouri Bridge Co. v. Stone, 174 Mo. 1, 73 S.W. 453, 63 L.R.A. 301; Phillips Pipe Line Co. v. Brandstetter, 241 Mo.App. 1138, 263 S.W.2d 880; Kirk-Christy Co. v. American Association, 128 Ky. 668, 108 S.W. 232; Pittsburg Hydro-Electric Co. v. Liston, 70 W.Va. 83, 73 S.E. 86, 40 L.R.A.,N.S., 602; Cumberland Telephone & Telegraph Co. v. Yazoo & Mississippi Valley Railroad Co., 90 Miss. 686, 44 So. 166; Central Hanover Bank & Trust Co. v. Pan American Airways, 137 Fla. 808, 188 So. 820; San Joaquin & Kings River Canal & Irrigation Co. v. Stevenson, 164 Cal. 221, 128 P. 924; Northwestern Electric Co. v. Zimmerman, 67 Or. 150, 135 P. 330.

■ Another ground of attack upon the judgment is that the transmission line was not for a public purpose; that it was for private use; and that it was constructed to serve only one customer. Two written contracts entered into between the Company and the City of Coffeyville are relied upon to sustain the contention. The City of Coffeyville was also engaged in the business of generating, transmitting, and selling electric energy. Each of the two contracts provided among other things that, with an exception not having material bearing here, no part of the electric power and current transmitted over any of the transmission lines of the Company within the city, should be sold or delivered to any one within the city limits, or to any then present or future customer outside of the city limits, with whom the city had made an electric service connection. No customers were served directly from the transmission line in question. Such transmission line extended to and terminated at a substation and switching yard of the Company located in the City of Coffeyville. At that point, some of the electric energy coming into the substation from one or another transmission line was transformed to lesser voltages used in supplying circuits and supply lines extending from the substation, which in turn supplied various customers, either with or without further transformation to a different voltage. The Cooperative Refinery Association was supplied from such substation originally by one, and later two, supply line circuits of voltage which were energized only after the voltage was transformed at the substation. Other customers received electricity from such supply line extending from the substation. On one supply line circuit from the substation there were at least sixty-five single phase customers such as residences and six power customers, all within a distance of ten miles from the substation. Since the transmission line was to become a part of the integrated system of the Company and was to be devoted to the particular service indicated, we are clear in the view that it was for a public purpose as distinguished from private use. Dotson v. Atchison, Topeka & Santa Fe Railway Co., 81 Kan. 816, 106 P. 1045; Dairyland Power Cooperative v. Brennan, 248 Minn. 556, 82 N.W.2d 56.

■ Insofar as 14,869.28 square feet of area or .341 acres described in the complaint is concerned, the judgment is challenged upon the further ground that such area was not included in the description of land set out in the petition of condemnation for the fifty-foot strip; and that such area was not appraised. The petition in the condemnation proceeding described the strip to be condemned as follows:

"A strip twenty-five (25) feet right and left of a line beginning at a point, which point is approximately thirteen hundred fifteen (1315) feet South of the Northwest corner of the Northeast 1/4 of Section 33; Township 34 South; Range 16 East, thence East approximately six hun-

dred seventy (670) feet, thence Northeasterly approximately two thousand three hundred seventeen (2,317) feet to a point on the East line of the said Northeast 1/4 which point is approximately one hundred (100) feet South of the Northeast corner of said Northeast 1/4, with additional rights for such anchors as necessary, with guy wires attached thereto, at the turn points. Said anchors to be located not more than seventy (70) feet from the turn point poles."

The Company was not authorized to go upon the premises of Cline for the purpose of making a survey before the institution of the condemnation action, and the description contained in the petition was seemingly the most accurate which could be furnished under the circumstances. When the transmission line was actually constructed, it was positioned a few feet north of the center of the assumed boundary lines at the east side of the land owned by Cline. But the transmission line was constructed within the limits of the right-of-way easement. There was no occupancy beyond the right-of-way condemned. It is to be observed that the description contained in the petition in the condemnation proceeding was not stated in fixed and unyielding points, courses, and distances. The point of beginning was one of approximation, and subsequent courses and distances were likewise stated in terms of approximation. But the description was not so vague and indefinite as to be fatally infirm. Wisner v. Board of Commissioners of Barber County, 73 Kan. 324, 85 P. 288; Salina Northern Railroad Co. v. Allison, 100 Kan. 472, 164 P. 1068. And we think that the proceedings in condemnation had and have the effect of vesting in the Company an easement for right-of-way purposes of a strip of land fifty feet in width, twenty-five feet left and twenty-five feet right of the electric line as constructed, with no excess area in square footage or otherwise.

The judgment is

Affirmed.